ROBERTS, Justice.
The question here is on the validity of a lease agreement entered into between the appellant Hillsborough County Aviation Authority, as lessor (hereinafter referred to as “the Authority”) and the appellant Eastern Airlines, Inc., as lessee (hereinafter referred to as “Eastern”). The lease in question granted to Eastern “the privilege of placing a Neon sign on the airport side of the lean-to of the hangar presently existing on Tampa International Airport.” By an amendment to such lease, the location of the sign was subsequently changed to the roof of the hangar building.
The validity of such lease was attacked by National Airlines, Inc., the appellee here (hereinafter referred to as “National”) in proceedings instituted by it in the court below, on the grounds that such lease (1) violated Article XVII of a lease between the Authority and National and (2) unfairly discriminated against National in the Authority’s management and operation of Tampa International Airport. After hearing the testimony of the witnesses, the Chancellor entered his final decree sustaining National’s contentions and decreeing that the lease was null and void. The Authority and Eastern have appealed from such decree.
Under 'Chapter 23339, Laws of Florida, Special Acts of 1945, the authority is given exclusive jurisdiction, control, supervision and management over all airports in Hills-borough County and is authorized “to let or lease any air port or portion of the same, including the buildings and hangars thereon and to grant concessions upon such terms and conditions as it shall deem proper.” Prior to the execution of the lease agreement in question, the Authority had entered into lease agreements with both National and Eastern relating to their use of the airport facilities and leasing to them *63 space in the Administration Building for their exclusive use. It appears that these leases are substantially the same, and each contains an identical Article XVII, which reads as follows:
“Lessor covenants and agrees not to enter into any lease, contract or agreement with any other air transport operator with respect to the airport containing more favorable terms than this lease or to grant to any other air transport operator rights, privileges or concessions with respect to the said airport which are not accorded to the Lessee hereunder unless the same terms, rights, privileges and concessions are concurrently made available to the Lessee.”
It should also be noted that National’s lease (and presumably Eastern’s) contains the following provision:
“The Lessee shall have the right and option at any time and from time to time during the term hereof and of any extension or renewal, to lease, for the exclusive use of itself or of any air transport company subsidiary to or affiliated with it, any additional space at the Airport not necessary in the opinion of Lessor to the Lessor’s operation of the Airport and at the time not leased to others, whether such space is adjacent to the space leased hereunder or otherwise, together with any or all rights, facilities, licenses and privileges appurtenant to such space and to the Airport, upon the same general terms and conditions as are herein established.”
It appears that the lease in question, relating to the placing of a neon sign on the hangar, was entered into by the Authority and Eastern without notice to National (although it also appears that National had not at that time requested space on this or any other building for such purpose), and it is National’s contention here that “Article XVII of its lease requires that where, as here, the Authority has but a single privilege to extend, that is, a privilege that cannot be accorded all airlines, then it must concurrently make it available to all airlines by offering it to the highest bidder.” This contention cannot be sustained.
The general leases entered into by the Authority with National and Eastern were obviously drawn to conform with the provisions of the Civil Aeronautics Act of 1938, as amended, 49 U.S.C.A. § 401 et seq., and the rules and regulations promulgated thereunder, since the space and facilities leased by them were constructed by the partial use of federal funds. Section 303 of the Act, Title 49 U.S.C.A. Section 453, provides, in part, that “There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended.”
By Section 401(7), Title 49 U.S.C.A., “Air navigation facility” is defined as follows:
“ ‘Air navigation facility’ means any facility used in, available for use in, or designed for use in, aid of air navigation, including landing areas, lights, any apparatus or equipment for disseminating weather information, for signalling, for radio-directional finding, or for radio or other electrical communication, and any other structure or mechanism having a similar purpose for guiding or controlling flight in the air or the landing and take-off of aircraft.”
By Section 401(22), ibid., “landing area” is defined as follows:
“ ‘Landing area’ means any locality, either of land or water, including airports and intermediate landing fields, which is used, or intended to be used, for the landing and take-off of aircraft, whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for receiving or discharging passengers or cargo.”
It will be seen, then, that the only “exclusive right” which the Authority is prohibited by Section 303 from granting is as to landing areas and air navigation facilities. Such areas and facilities are capable of use in common by all air transport operators. “Courts should attempt to give words and phrases used in contracts the natural meaning or that meaning most com *64 monly understood when considered in reference to subject matter and circumstances.” Rupp Hotel Operating Co. v. Donn, 158 Fla. 541, 29 So.2d 441, 445. And we think that, considering the subject matter and the circumstances, the “rights, privileges or concessions” which the Authority is required by Article XVII to concurrently make available to National refer only to those which are capable of use in common with other air transport operators, such as landing areas and air navigation facilities, and not to those which, by their very nature, are suitable only for exclusive use and occupancy by a single air transport company.
Nor can we adopt National’s contention that “to concurrently make available” means “to submit to the highest bidder.” This is not only a strained construction of the phrase, but a provision which could easily have been inserted in the lease, if such had been the intention of the parties. Moreover, Article XVII prohibits the Authority from granting to any other air transport operator rights, privileges or concessions “unless the same terms, rights, privileges and concessions are concurrently made available to the Lessee.” (Emphasis supplied.) An offer on the same terms precludes a submission to the highest bidder and confirms us in our view that Article XVII refers only to “rights, privileges or concessions” that are capable of use in common by the lessee and other air transport operators.
We hold, then, that the lease in question does not do violence to Article XVII of National’s lease.
The Chancellor found, also, that the lease in question unfairly discriminated against National. Even if it be conceded, as contended by National, that the space atop the hangar building is the most desirable place for a neon sign, the mere fact that Eastern and the Authority entered into a lease agreement respecting such space is not unfairly discriminatory against National, just as the lease of the most desirable space in the Administration Building to another air transport company for a ticket counter would not be discriminatory against National, all other things being equal.
If the Authority refused to entertain an application by National for space upon which to erect a neon sign, or required terms which were not fair and reasonable, as compared to those given to Eastern, then National might have some ground for complaint that it had been unjustly discriminated against; but the mere fact of the lease to Eastern respecting the neon sign is not “unjust discrimination.”
For the reasons stated, the decree appealed from should be and it is hereby
Reversed.
HOBSON, €. J., and SEBRING, MATHEWS and DREW, JJ., concur.
TERRELL and THOMAS, JJ., not participating.