707 So.2d 733 (1998)
CONTAINER CORPORATION OF AMERICA, Petitioner,
v.
MARYLAND CASUALTY COMPANY, Respondent.
No. 90150.
Supreme Court of Florida.
March 26, 1998.
*734 Steven A. Werber and Tracy S. Carlin of Foley & Lardner, Jacksonville, for Petitioner.
Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for Respondent.
Allan P. Clark and John W. Caven of Foley & Lardner, Jacksonville, for Florida Associated General Contractors Council, Inc., amicus curiae.
GRIMES, Senior Justice.
We review the decision in Container Corporation of America v. Maryland Casualty Company, 687 So.2d 273 (Fla. 1st DCA 1997), which conflicts with the opinion in *735 Florida Power & Light Co. v. Penn America Insurance Co., 654 So.2d 276 (Fla. 4th DCA 1995). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Southern Contractors, Inc. (Southern) entered into an agreement with Container Corporation of America (Container) to install a vacuum pump on a paper machine at a plant operated by Container. The contract provided that Southern would indemnify Container from "liabilities incurred or arising as a result of the performance by [Southern] of its duties [under the agreement]." The contract also required Southern to purchase a comprehensive liability insurance policy which named Container as an additional insured. Southern secured a liability policy from Maryland Casualty Company (Maryland), which contained an endorsement identifying Container as an additional insured and stating "Interest for operations at operations site by Southern Contractors, Inc." There was no reference to the contract in the Maryland policy.
Thereafter, Daniel Raker, a Southern employee, filed suit against Container, alleging that he had suffered injuries at Container's plant as a result of Container's negligence. Maryland then initiated a declaratory judgment action to determine whether Container was insured for this type of claim under Southern's policy. Both parties moved for summary judgment. The trial court entered summary judgment in favor of Maryland upon the rationale that the policy was limited to coverage for Container's vicarious liability and did not cover Container for its own negligence. The First District Court of Appeal affirmed, reasoning that the indemnity language of the underlying contract between Southern and Container made it clear that the coverage provided by the policy was intended to be limited to Container's vicarious liability. Container, 687 So.2d at 274.
At the outset, we agree that the indemnity language of the contract does not require Southern to hold Container harmless for Container's own negligence. University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla.1973). However, we cannot agree with the conclusion that the indemnity language of the contract is dispositive of the coverage issue. The policy did not insure the contractual liability of Southern. Rather, the policy contained an endorsement naming Container as an additional insured.[1] The language of the policy is controlling.
In Florida Power & Light, a contract between Florida Power and Light (FP & L) and Eastern Utility Construction, Inc. (Eastern), an independent contractor, for renovations to FP & L's substation required the contractor to purchase general liability insurance. The policy procured by the contractor defined "Persons or Entities Insured" as "any person, organization, trustee, or estate... but only with respect to operations by or on behalf of the Named Insured or to facilities used by the Named Insured." Florida Power & Light, 654 So.2d at 278. Thereafter, an employee of the contractor who was injured at the substation sued FP & L for its negligence related to his injury. The issue before the court was whether the personal injury claim came within the ambit of the definitional provision "but only with respect to operations by or on behalf of the Named Insured." In concluding that FP & L was an additional insured under the policy, the court stated:
In the instant case, the pertinent policy language merely reads "but only with respect to operations by or on behalf on the Named Insured," Eastern. No language in the provision requires fault on behalf of Eastern before FPL can be considered an additional insured. Thus, the language, similar to the language utilized in the cases discussed above, can only be considered ambiguous at best. The language that was employed by Penn America required only that FPL's liability arise out of the operations of Eastern. Obviously, Haywood's injuries and subsequent lawsuit arose out of some type of "operations" of Eastern as Haywood was an employee of Eastern working at the FPL substation. Therefore, because Penn America did not utilize *736 specific language limiting coverage to the vicarious liability situation and because the language actually utilized is ambiguous at best, the "additional insured" provision must be construed against Eastern and in favor of FPL, the insured. Consequently, the trial court erred in entering a summary judgment in favor of Penn America determining that FPL was not an additional insured under the policy.
Florida Power & Light, 654 So.2d at 279.
Ironically, another panel of the First District below relied on Florida Power & Light to decide a factually similar case contrary to its holding in the instant case. Container Corp. of America v. McKenzie Tank Lines, Inc., 680 So.2d 509 (Fla. 1st DCA), review dismissed, 679 So.2d 774 (Fla.1996). In McKenzie, Container was named in McKenzie's policy as an additional insured "regarding operations performed by insured." Id. at 512. The court reasoned that if there was an intent to limit coverage to accidents caused by the named insured, the certificate of insurance could have expressly so provided.
Several courts from other jurisdictions have interpreted "additional insured" policy provisions to reach the same result as Florida Power & Light in similar factual contexts. Thus, in Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co., 150 Ill.App.3d 472, 103 Ill.Dec. 495, 501 N.E.2d 812 (1986), the language adding the additional insured read: "but only with respect to liability arising out of operations performed for the additional insured by the named insured." Id., 103 Ill.Dec. at 497, 501 N.E.2d at 814. The court held that because the policy language was not expressly limiting, the additional insured was entitled to coverage for its own negligence. Accord Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co., 721 F.Supp. 740 (E.D.Pa.1989) (holding that language providing coverage for liability "arising out of" operations performed for the additional insured was not limited to coverage for additional insured's vicarious liability); Dayton Beach Park No. 1 Corp. v. National Union Fire Ins. Co., 175 A.D.2d 854, 573 N.Y.S.2d 700 (1991) (holding that failure of parties to use specific limiting language provided additional insured with coverage for its own negligence). Had Maryland wished to limit Container's coverage to vicarious liability, it could have done so by clear policy language. See Consolidation Coal Co. v. Liberty Mut. Ins. Co., 406 F.Supp. 1292 (W.D.Pa.1976) (construing coverage language as insuring the additional insured only for vicarious liability); see also Liberty Mut. Ins. Co. v. Capeletti Bros., Inc., 699 So.2d 736 (Fla. 3d DCA 1997).
Because the endorsement in the instant case contains no limiting language, we hold that Container was entitled to coverage under the Maryland policy for its own negligence arising out of "operations at operations site by Southern Contractors." This resolution does not end our labor because in entering summary judgment against Container, the trial judge also concluded that at the time of his injury, Raker was not engaged in Southern's "operations" or on the "operations site." However, the record in this case is not sufficiently clear for purposes of summary judgment with respect to where Raker's injury occurred or what he was doing at the time.
Because this case must be remanded for further development of the facts, we deem it advisable to provide some guidance with respect to the meaning of the relevant language. Unfortunately, neither the policy nor the endorsement defines "operations" or "operations site." Furthermore, neither party cites any cases which are useful in arriving at a definition of these words. Of course, the lack of a definition of an operative term used in a policy does not necessarily mean that the term is ambiguous and therefore in need of interpretation by the courts. Jefferson Ins. Co. v. Sea World of Florida, Inc., 586 So.2d 95, 97 (Fla. 5th DCA 1991). However, because this particular policy language is susceptible to differing interpretations, it too should be construed in favor of the insured. See Rigel v. National Cas. Co., 76 So.2d 285, 287 (Fla.1954).
We note that "operation" has been defined as "a doing or performing especially of action." Webster's Third New International Dictionary 1581 (1976). Thus, in the context of this case, we construe Southern's *737 "operations" to mean work done in the performance of Southern's contract with Container. Further, according to Webster, "site" means "the local position of [a] building, town, monument, or similar work either constructed or to be constructed especially in connection with its surroundings." Id. at 2128. Therefore, we conclude that defining "operations site" requires a case-specific factual analysis that considers the area where the employee will travel in order to achieve the employer's mission. Factors such as the size of the plant and norms of the employees working at the plant are relevant to this determination. The operations site certainly includes the area where the service contracted for is performed, which in this case is the area where the vacuum pump was to be installed. However, the "operations site" is not necessarily confined to the immediate area where the work is performed. Logically, coverage should be extended to include areas where the employee would be routinely required to go to complete the work. In addition, ingress and egress to and from the work area as necessary for the employee to complete the work are also covered by the policy.
The more difficult question is whether "operations site" should be extended to include areas which are not central to completion of the employer's mission but which are related to everyday activities of all types of employees. For example, areas where an employee will travel for activities that are ancillary but necessary for successful completion of the project should be covered under the policy. Logically, this would include trips to a cafeteria or restroom on the premises. Conversely, coverage should not be extended to unauthorized areas or activities.
Accordingly, we quash the decision below and approve Florida Power and Light. We remand the case for further proceedings consistent with this opinion.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING and WELLS, JJ., concur.
ANSTEAD, J., recused.
NOTES
[1] We reject Maryland's reliance upon Allianz Ins. Co. v. Goldcoast Partners, Inc., 684 So.2d 336 (Fla. 4th DCA 1996), because there was no indication in that case that the claimant had been named in the policy as an additional insured.