# Third District Court of Appeal

## State of Florida

Opinion filed October 10, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2761
Lower Tribunal No. 16-16445
_____

**Brickell Harbour Condominium Association, Inc.,**
Appellant,

vs.

**Hamilton Specialty Insurance Company,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, John Schlesinger, Judge.

Kramer, Green, Zuckerman, Greene and Buchsbaum and Robert I. Buchsbaum, for appellant.

Kelley Kronenberg and Kimberly J. Fernandes (Tallahassee), for appellee.

Before ROTHENBERG, C.J., and SALTER, and LOGUE, JJ.

SALTER, J.

Brickell Harbour Condominium Association, Inc. ("Association"), appeals a non-final order granting Hamilton Specialty Insurance Company's ("Insurer's") motion for a summary judgment compelling appraisal. The underlying circuit court lawsuit concerns a major water damage claim by the Association under its commercial insurance policy ("Policy") issued by the Insurer. We affirm.

The Association's claims of error on appeal are: (1) the Insurer failed to comply with its post-loss obligations under the Policy, a condition precedent to its demand for appraisal; (2) the Insurer's appointment of one of the appraisers violated the Policy provision, as the appraiser was not impartial; and (3) the trial court order was premature, as the Association had been prohibited from completing depositions regarding the alleged breaches of the Policy by the Insurer.

We reject each of these arguments for the reasons which follow.

I.     Post-Loss Obligations

The undisputed facts establish that a water valve leak caused major water damage at the Association's property in December 2015. The Association made a claim under the Policy, and the Insurer sent a property claim analyst and adjuster to investigate the claim. In February 2016, the Insurer issued an advance payment of $150,000.00 to the Association regarding the claim, and the Insurer made a further payment of $300,000.00 to the Association in May 2016.[1]    Based on the

_____

[1]   The Policy carried a deductible of $50,000.00 applicable to the Insurer's evaluation of the claim. The second payment thus reflected full payment (in the

2

Association's refusal to agree that the claim had been fully adjusted and paid, the Insurer sought appraisal under the terms of the Policy.

The following month, the Association sued the Insurer. The Association claimed that the Insurer breached the Policy, demanded appraisal prematurely, and was liable for money damages exceeding the sums previously advanced by the Insurer.

The Policy provision regarding appraisal included these pertinent terms:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

As its first issue on appeal, the Association argues that the Insurer did not comply with its post-loss obligations by (1) adjusting the claim within 90 days of receipt, and (2) providing a "meaningful exchange of information,"[2] regarding the Insurer's calculation of the claim amount, conditions precedent to a party's right to demand appraisal. See also State Farm Fla. Ins. Co. v. Hernandez, 172 So. 3d 473,

---

Insurer's view) of a total claim of $500,000.00. The Insured disputed that evaluation and commenced the underlying circuit court lawsuit in June 2016.

[2] The term in quotation marks is the condition described by this Court in United States Fidelity & Guaranty Co. v. Romay, 744 So. 2d 467, 470 (Fla. 3d DCA 1999).

3

476-77 (Fla. 3d DCA 2015) ("the party seeking appraisal **must comply with all post-loss obligations** before the right to appraisal can be invoked under the contract.").

The Insurer made a payment within 90 days of receipt of the claim (the $150,000.00 advancement), and the Policy does not contain a "time is of the essence" provision. The Insurer contends, and the trial court agreed, that under those circumstances the parties would have a reasonable time within which to tender performance after the ninety-day period specified in the Policy.[3] Command Sec. Corp. v. Moffa, 84 So. 3d 1097, 1099 (Fla. 4th DCA 2012). It defies reason to construe the Policy provisions to require the Insurer to pay the entire claim amount demanded by the Association or lose the right to demand an appraisal.

Turning to the exchanges of information between the parties before the Insurer demanded appraisal, the adjusters and consultants for the parties met for inspections of the damaged areas and exchanged photographs, labor and materials estimates, and updates regarding the claim. For example, the record includes an email of January 7, 2016, from a consultant for the Association to a consultant for the Insurer, transmitting a "drop box link" enabling the parties to share the loss

---

[3] The Policy's period of 90 days for payment of covered damage was subject to exceptions for the denial of part of a claim "or factors beyond our control" preventing payment.

4

incident report, job notes, estimates, invoices, and photos assembled by the Association.

One of the responses, an email dated March 3, 2016, from Matthew Flax (an inspector on behalf of the Insurer) to Daniel Odess (the Association's public adjuster and contractor), includes photos of the damage and loss estimates for emergency services, reconstruction, and elevator repairs. These exchanges of information meet the test of "meaningful" exchanges.

But a part of the Association's response, two weeks later, was an affidavit from Mr. Odess, together with fraud and civil remedy notices filed by him against the Insurer and its consultants with the Florida Department of Financial Services. Unsurprisingly, this put a serious crimp in further professional exchanges of repair costs and estimates of the loss.

The trial court correctly concluded that these exchanges and other communications in the record satisfied the appraisal provision's condition for an appraisal demand—the parties unquestionably disagreed regarding the amount of the loss, and each had provided "meaningful information" to the other.

II. "Impartial" Appraiser Issue

The Association contends that the Insurer's appointment of Randy Ison as its party-designated appraiser (of the three to conduct the appraisal) was a breach of the Policy requirement that each appraiser be "impartial." Mr. Ison is an employee

of J.S. Held, a building consultant hired by the Insurer. There is no indication in the record, however, that Mr. Ison himself was directly paid by the Insurer, or that any part of Mr. Ison's or J.S. Held's compensation for work on the appraisal or the Association's claim would include a contingent fee.[4]

The Association's argument that Mr. Ison should be disqualified because he's the boss of Mr. Flax (an employee of J.S. Held involved in actually considering the Association's claim) and "Mr. Flax is the subject of a fraud inquiry with the [Florida Department of Financial Services]" is transparently circular. The Association's public adjuster, having launched the "fraud inquiry," now claims its own action defeats Mr. Ison's impartiality.

There is little case law on this issue,[5] and what little case law is available involves arbitrators rather than appraisers. The Association argues that the analogy fails because arbitrators have a code of ethics and appraisers do not.

But tellingly, the appraisal provision in the Policy states that "Each party will: a. Pay its chosen appraiser; and b. Bear the other expenses of the appraisal

---

[4] The existence of a contingent fee payable to the party-appointed appraiser has been identified as a "factor" in assessing partiality; see Verneus v. Axis Surplus Ins. Co., 2018 WL 3417905 (S.D. Fla. 2018).

[5] See Florida Ins. Guar. Ass'n v. Branco, 148 So. 3d 488, 495 (Fla. 5th DCA 2014) ("Our research has revealed no Florida case that has squarely addressed whether a party's attorney may serve as a 'disinterested appraiser.'"). In Branco, our sibling court held that an attorney's fiduciary duty to the party seeking to appoint him or her violated the policy's requirement for "disinterested" appraisers.

and umpire equally." The tie-breaking third appraiser—often referred to as the "umpire" (as in the Policy before us) or "neutral"—provides the real impartiality. If an appraiser acts unprofessionally, skews what should be objective calculations regarding materials and labor costs, and puts the proverbial thumb on the scale, the umpire is the safeguard empowered to reject such efforts by siding with the other party-appointed appraiser. Alternatively, a professionally-qualified umpire may negotiate one or both of the party-appointed appraisers into a reasonable compromise.

We conclude, after consulting our own decision in Rios v. Tri-State Insurance Co., 714 So. 2d 547 (Fla. 3d DCA 1998), and the other authorities cited to us by the parties, that "impartiality" means something other than the "dictionary definition" as it relates to appraisers appointed and paid by the parties. In Rios, the policy provision required each party to select a competent "independent" appraiser.

Following a survey of decisions in other jurisdictions and a review of the Code of Ethics for Arbitrators in Commercial Disputes, this Court concluded that an appraiser's "direct or indirect financial interest in the outcome of the arbitration," including an arrangement for a contingent fee, requires disclosure rather than disqualification in the case of an appraiser. This Court then ordered the appraisers to make the disclosures to each other and the parties as provided by the Code. Id. at 550.

7

We conclude that this remains a "workable approach to this issue," id., and encourage such disclosures in the present case before the confirmation of the appraisal. On the record before us, we agree with the trial court that the Insurer's appointment of Mr. Ison did not warrant disqualification.

III.    Depositions

The trial court's order limiting the Association's right to depose several of the Insurer's consultants is outside our limited review of the non-final order before us. Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv) is jurisdictional; it limits the scope of our review of other proceedings and orders preceding the summary judgment granting the Insurer's motion to compel appraisal. Interlocutory discovery orders are ordinarily subject to the rigorous requirements of certiorari—a departure from the essential requirements of law, material injury for the remainder of the case, and the absence of an available remedy on appeal. Bd. of Trs. of Internal Improvement Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 454 (Fla. 2012).

Insofar as the Association attempts to raise such discovery issues as a bar to the Insurer's demand for appraisal, however, we will address the Association's argument.

The discovery sought by the Association and denied by the trial court is directed to the merits of the parties' positions regarding the insurance claim. The

8

trial court had before it ample evidence that the parties disagreed with each other regarding the allowable claim amount, and that they had exchanged meaningful information regarding those positions. In the appraisal process, each side will be incented to share information supporting its computation of the labor costs and materials that will be required to compensate the Association for its loss in accordance with the Policy provisions. The trial court did not err in declining to allow the extensive discovery sought by the Association as a precondition to the actual appraisal process.

IV.    Conclusion

For these reasons, we reject the Association's arguments on appeal and affirm the circuit court order directing the parties to proceed with appraisal of the Association's property damage claim.