# Supreme Court of Florida

---

No. SC21-172

---

**JON DOUGLAS PARRISH,**
Petitioner,

vs.

**STATE FARM FLORIDA INSURANCE COMPANY,**
Respondent.

February 9, 2023

COURIEL, J.

May the president of a homeowner's public adjusting firm, which is to be compensated on a contingency basis for its adjusting services, subsequently serve as a "disinterested" appraiser under the language of an insurance policy? No, said the Second District Court of Appeal, *State Farm Florida Insurance Co. v. Parrish*, 312 So. 3d 145 (Fla. 2d DCA 2021), acknowledging that its decision conflicted with the rule in the Third District Court of Appeal. *See Brickell Harbour Condo. Ass'n v. Hamilton Specialty Ins. Co.*, 256 So.

3d 245 (Fla. 3d DCA 2018).[1]  Finding no way around the plain meaning of the word "disinterested," we approve the Second District's decision below and hold that an appraiser cannot be "disinterested" if he or she, or a firm in which he or she has an interest, is to be compensated for services as a public adjuster with a contingency fee.

# I

Jon Parrish was insured under a policy issued by State Farm Florida Insurance Company (State Farm) when, in September 2017, Hurricane Irma damaged his home.  Mr. Parrish filed a claim and hired Keys Claims Consultants, Inc. (KCC) to provide public adjusting services—that is, to assess the damage and the cost of repairs.  Mr. Parrish agreed to pay KCC a contingency fee equal to ten percent of whatever amount he eventually recovered from State Farm.

In December 2017, representatives from State Farm and KCC inspected and evaluated the damage to Mr. Parrish's home.  KCC presented its estimate of the losses to State Farm, but State Farm

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

could not reconcile KCC's estimate with its own. On January 8, 2018, State Farm attempted to schedule a second inspection with KCC.

That same day, Bobby Sims of KCC wrote a letter to State Farm demanding that the appraisal process set forth in Mr. Parrish's insurance policy be initiated. In his letter, Mr. Sims specified that George Keys, the president of KCC, would serve as Mr. Parrish's appraiser. The appraisal provision in Mr. Parrish's policy stated:

> If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. A demand for appraisal must be in writing. You must comply with Your Duties After Loss before making a demand.
>
> *Each party will select a qualified, disinterested appraiser* and notify the other of the appraiser's identity within 20 days of receipt of the written demand. Each party shall be responsible for the compensation of their selected appraiser. The two appraisers shall then select a qualified, disinterested umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. Reasonable expenses of the appraisal and the reasonable compensation of the umpire shall be paid equally by you and us.

(Emphasis added.)

State Farm responded on January 15 that it would be premature to enter appraisal before it finished investigating Mr. Parrish's claim. State Farm also requested that KCC appoint an appraiser other than Mr. Keys. According to State Farm, Mr. Keys could not be considered a "disinterested" appraiser since his firm was already serving as Mr. Parrish's public adjuster.

On February 10, having completed its investigation of the claim, State Farm sent a letter to KCC with its own significantly lower damages estimate. After unsuccessful efforts to reconcile the estimates, State Farm issued its own demand for appraisal. Mr. Parrish again named Mr. Keys as his appraiser. State Farm then petitioned a trial court to compel Mr. Parrish to enter appraisal with a disinterested appraiser.

The trial court denied State Farm's petition, finding that Mr. Keys could serve as Mr. Parrish's disinterested appraiser because the two had disclosed their arrangement to State Farm. *State Farm Fla. Ins. Co. v. Parrish*, 26 Fla. L. Weekly Supp. 829, 830 (Fla. 20th Cir. Ct. Dec. 14, 2018) (citing *Brickell Harbour*, 256 So. 3d at 249 ("[D]isclosure rather than disqualification in the case of an appraiser" with a "direct or indirect financial interest in the

- 4 -

outcome of the arbitration" is a "workable approach.")).  The trial court also found that—unlike the parties in *Florida Insurance Guaranty Ass'n v. Branco,* 148 So. 3d 488 (Fla. 5th DCA 2014)[2]—Mr. Parrish and KCC had no confidential attorney-client relationship that would disqualify Mr. Keys.

The Second District reversed.  *Parrish,* 312 So. 3d at 151.  It found that, within the context of the policy, "disinterested" was not ambiguous, and the requirement that appraisers be "disinterested" plainly excluded any appraiser who held an interest in the outcome of the appraisal process.  *Id.* at 149-50.  Therefore, Mr. Keys could not serve as Mr. Parrish's disinterested appraiser.  *Id.* at 151.

The Second District found that Mr. Keys had an interest for two reasons: First, KCC's ten percent stake in Mr. Parrish's insurance payout necessarily gave Mr. Keys, the firm's president, a pecuniary interest in the outcome of appraisal.  *Id.*  Second, Mr.

---

2.  In *Branco,* the insureds' proposed appraiser had been their attorney.  148 So. 3d at 494.  The Fifth District Court of Appeal concluded that "[g]iven the duty of loyalty owed by an attorney to a client . . . attorneys may not serve as their clients' arbitrators or appraisers when 'disinterested' arbitrators or appraisers are bargained for."  *Id.* at 496.

Keys could not be disinterested because KCC represented Mr. Parrish as his public adjuster. *Id.* at 150. As to the latter finding, the Second District expressly extended *Branco*'s prohibition of attorney-appraisers to public-adjuster-appraisers because "an insured hires [both] for much the same purpose in these disputes: to maximize the insured's financial recovery on the policy." *Id.* at 151 n.4.

The Second District certified conflict with *Brickell Harbour* "to the extent it holds that a public adjuster who has a contingency interest in an insured's appraisal award or represents an insured in an appraisal process can serve as a 'disinterested appraiser' under a policy's appraisal provision." *Parrish*, 312 So. 3d at 151. We resolve that conflict today.

**II**

Because there is no factual dispute, the only issue we must determine is what "disinterested" means in the context of this insurance policy. We review the decision below on that question de novo. *Am. S. Home Ins. Co. v. Lentini*, 286 So. 3d 157, 158 n.2 (Fla. 2019) (citing *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)).

- 6 -

**A**

We start with the text of the insurance policy. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) ("[I]nsurance contracts are construed according to their plain meaning."); *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993) ("Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."). We read policies as a whole and undertake to give every provision its "full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). We do so because "the intention of the [contracting] parties governs, and such intention will be determined from the language used when it is unambiguous." *Robbinson v. Cent. Props., Inc.*, 468 So. 2d 986, 988 (Fla. 1985).

Assigning to the contractual term its plain meaning in the first instance, we nonetheless check the context of the contract as a whole to determine whether the parties agreed to give "disinterested" a meaning other than the one ascribed to it in general usage. *See In re Yates Dev., Inc.*, 256 F.3d 1285, 1290 (11th Cir. 2001) ("Appellee concedes that, when construing a

contract, a court should look to the whole contract.") (citing *Transp. Rental Sys. Inc. v. Hertz Corp.*, 129 So. 2d 454, 456 (Fla. 3d DCA 1961)). The most obvious indication to this effect would be if Mr. Parrish's insurance contract defined the term "disinterested." It does not. *See Gov't Emp. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) ("When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning . . . .") (quoting *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015)).

Next, while neither party comes right out and argues that "disinterested" is a term of art in the context of insurance, each looks to our statutes for support of its view of the roles of public adjusters and appraisers. So we consider Florida's Insurance Code to see whether it gives us a reason to assign to the word "disinterested" anything other than its ordinary meaning. *See Walter E. Headley Jr., Miami Lodge No. 20 v. City of Miami*, 215 So. 3d 1, 9 (Fla. 2017) ("[W]hen the words in a statute are technical in nature and have a fixed legal meaning, it is presumed that the Legislature intended that the words be given their technical meaning."); *Hillsborough Cnty. Aviation Auth. v. Nat'l Airlines*, 63 So. 2d 61, 63-64 (Fla. 1953) ("Courts should attempt to give words and

phrases used in contracts the natural meaning or that meaning most commonly understood when considered in reference to *subject matter* and circumstances.") (emphasis added) (quoting *Rupp Hotel Operating Co. v. Donn,* 29 So. 2d 441, 445 (Fla. 1947)).  It does not. First, Florida's Insurance Code does not define "disinterested."  Tit. XXXVII, chs. 624-632, 634-636, 641-642, 648, 651, Fla. Stat. (2017).[3]  And second, the three appearances of "disinterested" within Florida's Insurance Code each correspond with the word's nontechnical, common usage.[4]  These two facts, considered

---

3.  While "disinterested director" and "disinterested person" are defined elsewhere in the Florida Statutes, those definitions provide limited insight into the meaning of "disinterested" as used in the insurance provision before us.  *See* § 607.0901(1)(h), Fla. Stat. (2017) (defining "disinterested director" in the context of corporate governance as "[a]ny member of the board of directors of the corporation who was a member of the board of directors before" a certain date and "[a]ny member of the board . . . who was recommended for election by . . . a majority of the disinterested directors then on the board"); § 738.1041(1)(b), Fla. Stat. (2017) (defining "disinterested person" in the context of trust administration as "a person who is not a related or subordinate party with respect to the person acting as trustee of the trust and excludes the grantor and any interested trustee").

4.  *See* § 626.2815(7)(k)2, Fla. Stat. (2017) (requiring a "disinterested third party" to approve certain continuing education programs for insurance professionals); § 627.728(8)(a), Fla. Stat. (2017) (requiring a "disinterested employee" to evaluate an appeal of a notice of cancellation of an auto insurance policy);

together, reveal a legislative choice to allow the word's nontechnical, common usage to control. *See Nehme v. Smithkline Beecham Clinical Labs.*, 863 So. 2d 201, 204-05 (Fla. 2003) ("One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless words are defined in the statute or by the clear intent of the legislature.") (quoting *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992)); *see also Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1246 (11th Cir. 2008) ("When statutory terms are undefined, we typically infer that Congress intended them to have their common and ordinary meaning, unless it is apparent from context that the disputed term is a term of art.").

With no evidence within either Mr. Parrish's contract or Florida's Insurance Code indicating that we should do otherwise, we determine and apply the word's plain meaning. Dictionaries aid us in establishing the publicly understood plain meaning of a word whose relevant definition is contested, and we look to them when a

---

§ 628.431(2)(d), Fla. Stat. (2017) (requiring "disinterested appraisers" to determine the fair market value of certain capital stock).

contractual term is undefined within a contract. *See Macedo*, 228 So. 3d at 1113 ("[C]ourts may look to legal and non-legal dictionary definitions to determine" the "plain and ordinary meaning" of a term undefined in an insurance contract.) (quoting *Botee*, 162 So. 3d at 186); *see, e.g.*, *Siegle v. Progressive Consumers Ins.*, 819 So. 2d 732, 736 (Fla. 2002) (employing a dictionary to define "repair" and "replace" as used unambiguously in an insurance policy); *Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 736 (Fla. 1998) (same, but for the potentially ambiguous use of "operations"). We also engage in this exercise when a statutory term is undefined within a statute. *See Smith v. Smith*, 224 So. 3d 740, 745 (Fla. 2017) ("When necessary, the plain and ordinary meaning [of a statutory term] can be ascertained by reference to a dictionary.") (quoting *Bennett v. St. Vincent's Med. Ctr., Inc.*, 71 So. 3d 828, 839 (Fla. 2011)).

When Mr. Parrish and State Farm entered into their contract in 2016, *Black's Law Dictionary* defined "disinterested" as "[f]ree from bias, prejudice, or partiality and therefore able to judge the situation fairly; not having a pecuniary interest in the matter at hand." *Disinterested, Black's Law Dictionary* (10th ed. 2014).

Webster's dictionary defined it as "1: lacking or revealing lack of interest . . . apathetic . . . 2: not influenced by regard to personal advantage: free from selfish motive: not biased or prejudiced." *Disinterested, Webster's Third New International Dictionary* (1986). The Black's definition and the second Webster's definition are self-explanatory and consistent with each other: a "disinterested" person cannot, consistently with the generally understood meaning of that word, have a pecuniary interest in the matter at hand.[5]

**B**

That should not be the end of it, says Mr. Parrish, for two reasons. One has to do with language in his insurance contract adjacent to the provision at issue, and the other with two 1998 district court of appeal decisions.

---

5. A cursory examination of the Corpus of Contemporary American English from 2016 (as well as the years immediately prior) does not reveal—as Mr. Parrish would have us believe—any equivalence between "disinterested" and "transparent." *See Disinterested*, Corpus of Contemporary American English (COCA), https://www.english-corpora.org/coca/ (last visited Nov. 3, 2022). Instead, when Americans were not using the term "disinterested" as a synonym for "apathetic"—which was the case far more often than not—they were using it to reflect an absence of self-interest. *Id.* This latter use is entirely consistent with the purpose the term appears to be serving in Mr. Parrish's insurance policy.

First, Mr. Parrish argues that the context in which "disinterested" appears in his insurance provision requires us to understand it as modifying how an appraiser is selected, not compensated. Because the policy's requirement of disinterestedness comes before (and apart from) its statement that "[e]ach party shall be responsible for the compensation of their selected appraiser," Mr. Parrish argues, we should understand that the policy makes disinterestedness a matter separate and apart from the appraiser's manner of compensation. *See* Petitioner's Reply Brief at 2 ("The words of a governing text are of paramount concern, and what they convey, *in their context,* is what the text means.") (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). That asks a bit much of the text, though, which on its face speaks only to who will bear the cost of the appraisers' services. Such redefinition by subtle organization of words would seem an odd choice indeed, where the parties could have simply defined "disinterested" if they had meant for it to mean something other than what the dictionary says it does.

Second, Mr. Parrish argues that, in the context of his policy, "disinterested" is essentially identical to the word "independent." *See* Petitioner's Initial Brief at 10-13. That, he says, is what the Third District concluded in *Galvis v. Allstate Insurance Co.,* 721 So. 2d 421 (Fla. 3d DCA 1998). In that one-paragraph decision, the court invoked *Rios v. Tri-State Insurance Co.*, 714 So. 2d 547 (Fla. 3d DCA 1998), for the proposition that an appraiser could be "independent" while also receiving a contingency fee, then asserted (without anything in the way of reasoning, really) that the parties' use of the word "disinterested" in their agreement did not "make[] any legal difference." *Galvis*, 721 So. 2d at 421. But parties to a contract choose their words on purpose, and we respect those choices when we can discern them. "Independent" and "disinterested" may do similar work sometimes, but they are not the same. *Compare Independent, Black's Law Dictionary* (10th ed. 2014) (defining "independent" as "[n]ot subject to the control or influence of another"), *with Disinterested, Black's Law Dictionary* (10th ed. 2014) (defining "disinterested" as "[f]ree from bias, prejudice, or partiality and therefore able to judge the situation fairly; not having a pecuniary interest in the matter at hand"). Our

language is rich enough to have provided the parties a word to use had they chosen to permit the participation of an appraiser who was not subject to the control or influence of another, but not necessarily altogether free of any pecuniary interest in the matter: they might have called such an appraiser "independent." They said "disinterested" instead.

Our Legislature, too, has been choosy about these two words, using them together where the use of one would have sufficed if they meant the same thing.[6] *See* Scalia & Garner, *supra*, at 174 ("[E]very word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or have no consequence."). While "[s]ometimes drafters *do* repeat

---

6. *See* § 605.0804(2), Fla. Stat. (2022) ("A special litigation committee must be composed of one or more *disinterested and independent* individuals, who may be members.") (emphasis added); § 607.0744(3), Fla. Stat. (2022) ("Upon motion by the corporation, the court may appoint a panel consisting of one or more *disinterested and independent* individuals to make a determination . . . .") (emphasis added); *see also* Fla. Admin. Code R. 69W-700.027(4) ("For past transactions which are now closed, if there were less than two (2) such *disinterested independent* directors at the time of the transaction, the prospectus shall disclose that the issuer lacked sufficient *disinterested independent* directors to ratify the transaction.") (emphasis added).

themselves and *do* include words that add nothing of substance," *id.* at 176, "words with no meaning . . . should be regarded as the exception rather than the rule," *id.* at 178.

That an individual can be "independent" but not "disinterested"—or vice versa—further distinguishes these two terms. Take the corporate context, for example, in which "[r]emembering the difference between the concepts of an 'interested' director and of an 'independent' director is vital." William B. Chandler III & Leo E. Strine, Jr., *The New Federalism of the American Corporate Governance System: Preliminary Reflections of Two Residents of One Small State*, 152 U. Pa. L. Rev. 953, 997 (2003). An individual is "independent" from the other parties involved in a transaction, but "disinterested" as to the substance of the transaction itself. "Indeed, abstractly independent directors (defined by their *lack of connection to management*) may themselves have a conflict of interest in *particular corporate transactions . . . .*" Donald C. Clarke, *Three Concepts of the Independent Director*, 32 Del. J. of Corp. L. 73, 105-06 (2007) (emphasis added). Therefore, just as an independent board member can have a pecuniary interest in a corporate action because of an external connection to

the underlying subject matter, so too can a non-independent corporate officer be disinterested as to a particular firm transaction.

Mr. Parrish and State Farm did not agree to hire "independent" appraisers. They agreed to hire "disinterested" appraisers. From the text and structure of the policy, and in light of the Florida Insurance Code, we have no reason to think the parties' agreement was anything other than to require that each select an appraiser without an interest in the outcome of the claim.[7]

## C

The contingency fee arrangement agreed to between Mr. Parrish and KCC gives Mr. Keys, as president of KCC, a pecuniary interest in Mr. Parrish's claim. As a "member of a limited liability company"—in this case KCC—Mr. Keys is by definition an "interest holder" in it. *See* § 605.0102(31)(f), Fla. Stat. (2022). And here, Mr. Keys's interest is of a pecuniary, or financial, nature. *See Financial Interest, Black's Law Dictionary* (11th ed. 2019) (defining "financial

---

7. Finding no ambiguity in this choice, we have no reason to "construe[] [the policy provision] in favor of the insured and strictly against the drafter." *Taurus Holdings*, 913 So. 2d at 532 (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)).

interest" as "[a]n interest involving money or its equivalent"). Put simply, the more Mr. Parrish recovers, the more KCC collects; and the more KCC collects, the likelier it is that Mr. Keys will himself be in a position to be paid, or that his interest in KCC will be valuable. Mr. Keys's pecuniary interest in evaluating Mr. Parrish's loss such that Mr. Parrish recovers as much as possible means Mr. Keys is not "disinterested." To the contrary, the whole point of the contingency fee agreement is to align Mr. Keys's economic interests with Mr. Parrish's.

This breaks no new ground. Judge Sasso reached the same conclusion in *State Farm Florida Insurance Co. v. Crispin*, 290 So. 3d 150 (Fla. 5th DCA 2020), as did Judge Kuntz in his special concurrence in *State Farm Florida Insurance Co. v. Valenti*, 285 So. 3d 958 (Fla. 4th DCA 2019). Like the case before us, *Crispin* involved a dispute between an insured and State Farm over the same appraisal provision's use of "disinterested." 290 So. 3d at 151-52. In *Crispin*, the insured agreed to a ten percent contingency fee arrangement with her public adjuster whom she subsequently named to serve as her appraiser. *Id.* at 152. The Fifth District Court of Appeal found that this arrangement violated the

- 18 -

"disinterested" requirement, holding that "an appraiser is not disinterested in an insurance claim if the appraiser is entitled to a percentage of the recovery from the same insurance claim." *Id.* (citing *Valenti*, 285 So. 3d at 963 (Kuntz, J., concurring specially)). That the public adjuster and appraiser in *Crispin* were the same person does not distinguish that case from the one before us because, here, KCC's interest in the claim can be imputed to Mr. Keys as its president.

Mr. Parrish argues that disclosure of his contingency fee arrangement with Mr. Keys salvages the latter's "disinterested" status. *See* Petitioner's Initial Brief at 12-13 (citing *Galvis*, 721 So. 2d at 421, and *Rios*, 714 So. 2d at 550). Yet he directs us to no evidence that anyone—least of all the parties—understands disinterestedness to require either disclosure or secrecy. The word simply does not carry a meaning on that front, one way or the other.

**D**

Nor does the meaning of the word "disinterested" turn on the balance of economic interests between insureds and insurers. Mr. Parrish argues that because contingency fees require less out-of-

- 19 -

pocket investment by insureds than flat fees or hourly rates, insureds will suffer if we give effect to the plain meaning of the word "disinterested" in this policy. *See* Petitioner's Initial Brief at 35-37. State Farm answers that a more faithful conception of "disinterested" will result in less disagreement during appraisal, less reliance on an umpire, and ultimately less involvement of Florida courts. Respondent's Answer Brief at 56-58. To the extent this policy debate between the parties needs settling, it does not need it from us. *See Webb v. Hill*, 75 So. 2d 596, 605 (Fla. 1954) ("The Legislature determines the public policy of the state . . . .").

### III

Because Mr. Keys's company, KCC, is to be compensated via contingency fee, he has a pecuniary interest in the outcome of the claim and cannot qualify as a "disinterested" appraiser. We approve the Second District's decision and disapprove the Third District's decision to the extent it is inconsistent with our decision here.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.
FRANCIS, J., did not participate.

- 20 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

Under the majority's plain meaning analysis, a public adjuster compensated by an insured under a contingency fee agreement is disqualified from serving as a "disinterested" appraiser. While it is a standard matter of contract interpretation that the terms of insurance contracts be construed in accordance with their plain meaning, in this certified conflict case, the term "disinterested" is ambiguous. The majority's failure to recognize this ambiguity will result in a financial burden on insureds of limited economic means. I respectfully dissent.

The majority's analysis notwithstanding, the plain meaning of the word "disinterested" is not determinative because the term is ambiguous. *See Robbinson v. Cent. Props., Inc.*, 468 So. 2d 986, 988 (Fla. 1985) ("In construing contracts, the intention of the parties governs, and such intention will be determined from the language used *when it is unambiguous.*" (emphasis added)); *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 491 (Fla. 5th DCA 2014) ("*Absent ambiguity*, the plain meaning of an insurance policy

controls." (emphasis added)). The ambiguity of the term "disinterested" is reflected in the conflicting, reasonable interpretations of the district courts. Although the use of the term "disinterested" in the appraisal provision could require the appraisers not to have a pecuniary interest in the award, as the Second District held below and the majority holds today, "disinterested" could also mean that appraisers are required to exercise independent judgment and be unaffiliated with the parties, as other district courts have held. *See Branco*, 148 So. 3d at 496 (holding that attorneys, under the duty of loyalty owed to clients, cannot serve as "disinterested" appraisers for them); *Galvis v. Allstate Ins. Co.*, 721 So. 2d 421, 421 (Fla. 3d DCA 1998) (equating "disinterested" with "independent") (citing *Rios v. Tri-State Ins. Co.*, 714 So. 2d 547, 549 (Fla. 3d DCA 1998) (holding that an "independent" appraiser must be an "outside appraiser, unaffiliated with the parties")).

In the present case, interpreting "disinterested" to require independent judgment is particularly reasonable because the policy does not expressly prohibit the parties from compensating the appraisers with contingency fees. Indeed, interpreting

"disinterested" in this manner is proper because it is well settled that all ambiguities in an insurance contract must be resolved in favor of the insured. *See Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) ("Ambiguities are construed against the insurer . . . ."); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter."); *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) ("Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy."); *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997) ("It has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer."); *Firemans Fund Ins. Co. of S.F., Cal. v. Boyd*, 45 So. 2d 499, 501 (Fla. 1950) ("This court is committed to the rule that a contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous."). Facing two

reasonable interpretations, we should resolve the ambiguity in Parrish's favor and hold that receiving a contingency fee does not disqualify a public adjuster from serving as a "disinterested" appraiser.

However, the majority's plain language analysis disregards the ambiguity. Citing as an example this Court's decision in *Container Corp. of Am. v. Md. Cas. Co.*, 707 So. 2d 733, 736 (Fla. 1998), the majority turns to dictionaries to determine the plain meaning of the word "disinterested." Majority op. at 10-12. But in *Container*, this Court first stated that because the possibly ambiguous terms were "susceptible to differing interpretations," they "should be construed in favor of the insured." *Container*, 707 So. 2d at 736. This Court then looked to dictionary definitions to interpret the terms. *See id.* at 736-37.

In fact, the very definitions to which the majority defers highlight the ambiguity. For instance, *Black's Law Dictionary* defines "disinterested" as "able to judge the situation fairly." *Disinterested, Black's Law Dictionary* (10th ed. 2014). However, the majority moves past this language to instead focus on the language "free from pecuniary interest." *See* Majority op. at 11-12. The

appraisal provision uses the term "disinterested" to describe not only the appraisers, but also the umpire.  Just as the parties may have intended neither the appraisers nor the umpire to have a pecuniary interest in the matter, the parties may have intended the appraisers to exercise independent judgment like the umpire would.

The ambiguity of the word "disinterested" requires that the term be construed in the insured's favor.  Because the majority disregards this ambiguity, I dissent.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Second District – Case No. 2D19-130

(Collier County)

Mark A. Boyle and Gregory L. Evans of Boyle, Leonard & Anderson, P.A., Fort Myers, Florida,

for Petitioner

Kara Rockenbach Link and Daniel M. Schwarz of Link & Rockenbach, PA, West Palm Beach, Florida; and Robert A. Kingsford and Lynn S. Alfano of Alfano Kingsford, P.A., Maitland, Florida,

for Respondent

Kansas R. Gooden of Boyd & Jenerette, PA, Miami, Florida,

for Amicus Curiae Florida Defense Lawyers Association

L. Michael Billmeier, Jr. of Colodny Fass, Tallahassee, Florida,

for Amici Curiae Florida Property and Casualty Association and Personal Insurance Federation of Florida

Jason Gonzalez and Amber Stoner Nunnally of Shutts & Bowen LLP, Tallahassee, Florida, and Elise Engle of Shutts & Bowen LLP, Tampa, Florida; and William W. Large of Florida Justice Reform Institute, Tallahassee, Florida,

for Amicus Curiae Florida Justice Reform Institute